UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| CELESTE M. KELLY, | : | Case No. 3:19-CV-325 |
|---|---|---|
| Plaintiff, | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| v. | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

## I. INTRODUCTION

Plaintiff Celeste M. Kelly brings this case challenging the Social Security Administration's denial of her applications for Disability Insurance Benefits, and Supplemental Security Income, and for a period of benefits. She submitted her applications in April 2016. The claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Kevin R. Barnes concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed this action. She seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 8), the Commissioner's Memorandum in Opposition (Doc. No. 14), Plaintiff's Reply (Doc. No. 15), and the administrative record (Doc. No. 6).

## II. BACKGROUND

Plaintiff asserts that she has been under a disability since January 1, 2015. At that time, Plaintiff was forty-four years old. Accordingly, she was considered a "younger individual" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[1] She has at least a high school education.

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. No. 6-2, PageID 61-72), Plaintiff's Statement of Errors (Doc. No. 8), the Commissioner's Memorandum in Opposition (Doc. No. 14), and Plaintiff's Reply (Doc. No. 15). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as the Social Security Act defines

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

it—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241(citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence

3

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**IV. THE ALJ'S DECISION**

As noted previously, ALJ Barnes was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, ALJ Barnes considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

- Step 1: Plaintiff has not engaged in substantial gainful employment since January 1, 2015.

- Step 2: She has the severe impairments of degenerative disc disease of the lumbar spine with radiculopathy; obesity; asthma; and mild intellectual disability.

- Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

- Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work … subject to the following additional limitations: The claimant is able to lift and carry 10 pounds occasionally and up to 10 pounds frequently. She is able to stand and/or walk approximately two hours, and sit approximately six

hours in an eight-hour workday with normal breaks. She would be allowed to alternate sitting or standing for up to 15 minutes every hour. She should never climb ladders, ropes, or scaffolds. She should never crawl. She is able to occasionally climb ramps and stairs. She is able to balance, stoop, crouch, and kneel on an occasional basis. She should avoid concentrated exposure to environmental irritants such as fumes, odors, dust and gas; poorly ventilated areas; and industrial chemicals. Work is limited to simple, routine, and repetitive tasks; performed in a work environment free of fast-paced production requirements; involving only simple, work-related decisions; with few, if any, workplace changes."

Step 4: Plaintiff is unable to perform any past relevant work.

Step 5: Plaintiff could perform a significant number of jobs that exist in the national economy.

(Doc. No. 6-2 at PageID 63-72). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 72.

## V. DISCUSSION

Plaintiff argues that error occurred in evaluating the opinion from her certified physician assistant, James Gallagher. She also contends that the ALJ improperly interpreted raw medical data in functional terms.

Certified physician assistants like Mr. Gallagher are not considered "acceptable medical sources" and instead qualify as "other sources." 20 C.F.R. § 404.1527(f). Nonetheless, opinions from non-acceptable medical sources should be evaluated under the factors listed in 20 C.F.R. § 404.1527(c)(1)-(6) to the extent that such factors apply to the particular facts of each case. *Id.* In weighing these opinions, an Administrative Law Judge

5

should explain the weight they are giving to an opinion from an "other source," or ensure that a subsequent reviewer can understand the ALJ's reasoning. *Id.* However, although "[a]n ALJ must consider other-source opinions and generally should explain the weight given to opinions for these 'other sources…other-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 549 (6th Cir. 2014) (internal quotation marks and citations omitted); SSR 06-03p, 2006 WL 2329939, at *6.

Plaintiff saw Mr. Gallagher for routine physical care. (Doc. No. 6-2, PageID 69). His opinions were afforded "little weight" based on the following rationale:

> As for the opinion evidence, the claimant sees physician's assistant James Gallagher for routine physical care at the office of Martin J. Schear, M.D.. [sic] Mr. Gallagher completed a "Basic Medical" form at the behest of the Ohio Job and Family Services agency in March 2018 (8F). He indicated limitations consistent with an inability to perform even full time [*sic*] sedentary exertion work. In spite of his treatment history with the claimant, Mr. Gallagher is not an acceptable medical source (20 CFR 404.1513 and 416.913). Further, the minimal physical abnormalities noted by Mr. Gallagher on the examination proceeding the completion of this form in March 2018 only notes tenderness and reduced range of motion (9F, p. 76). The examination findings and conclusions [were] out of proportion to one another. As such, this is assigned little weight.

*Id.* In addition to Mr. Gallagher's opinions, the record contained opinions from physical consultative examiners, Drs. Damian Danopulos and Aivars Vitols, and state agency reviewing physicians, Drs. Anna Prosperi and Gerald Klyop. *Id.* at 69-70.

Plaintiff contends that the evidence of record, including Mr. Gallagher's treatment records and other medical evidence, support Mr. Gallagher's opinions and that error

6

occurred to the extent that other relevant medical evidence was not considered in weighing Mr. Gallagher's opinions. In contrast, the Commissioner maintains that it was reasonable to focus on Mr. Gallagher's observations that were "closest in time" to the issuance of his opinions, and that the ALJ properly considered those opinions.

Substantial evidence does not support the assessment of Mr. Gallagher's opinions. A cursory statement that Mr. Gallagher's opinions were "out of proportion" with his treatment notes from a single encounter does not equate to proper consideration under 20 C.F.R. § 404.1527(c). Mr. Gallagher's treatment involved more than a single encounter, and the observations made during the course of Plaintiff's treatment appear consistent with the other medical evidence of record, including the results of Plaintiff's MRI.

Despite his status as a non-acceptable medical source, Mr. Gallagher had treated Plaintiff for at least one year before rendering his opinions. During this period, Mr. Gallagher had approximately eight encounters with Plaintiff. Plaintiff occasionally presented to Dr. Martin Schear, but was otherwise regularly treated by Mr. Gallagher. Throughout the course of Plaintiff's treatment, Mr. Gallagher observed tenderness to palpitation and varying degrees of lumbar flexion and extension. (Doc. No. 6-9, PageID 912, 917, 922, 927, 932, 948). Based on his observations, he diagnosed Plaintiff with chronic lumbosacral pain, bilateral leg pain, bilateral low back pain with sciatica, sciatica laterally unspecified, and unspecified chronicity. *Id.* at 912, 918, 928.

Closely coinciding with the issuance of Mr. Gallagher's opinions, Dr. Schear observed "lsp tener spasm" and tenderness in Plaintiff's knees. (Doc. No. 6-9, PageID 937). He also observed Plaintiff's "gait with walker." *Id.* Dr. Schear made similar observations later that month and observed Plaintiff's "gait with cane." *Id.* at 952.

Additionally, shortly after Mr. Gallagher's opinions were rendered, physical therapy notes showed Plaintiff had "marked to severe tension" with tenderness in the lumbar area. *Id.* at 960. There were also "signs and symptoms consistent with lumbar radiculopathy" as well as decreased strength. *Id.* at 961. Her level of functioning at that time was "difficulty walking 15 min, sitting 10 min, sit to stand, and steps." *Id.* at 957. Plaintiff reported that she had used a cane for "the past four months or so" and she also used a cane during the examination. *Id.* at 957, 959. Previous physical therapy notes indicate that Plaintiff presented with "lumbar side bend ROM, impaired core and hip strength," "increased tenderness to palpitation," and that she had "positive tests for SI joint pain and positive signs for likely left pelvic upslip." (Doc. No. 6-8, PageID 735). Her primary functional limitations included impaired sitting, standing and walking tolerances. *Id.*

Several months prior to rendering his opinions, Mr. Gallagher had ordered a consult with physical therapy as well as an MRI of Plaintiff's lumbar spine, which later treatment notes categorize as "abnormal." *Id.* at 915, 923, 928, 932. The impressions of the MRI from November 2017 reflected "[m]ultilevel degenerative changes of the lumbar spine, most pronounced at L4-L5, as above," with "[s]evere right subarticular and foraminal disc

herniation at L4-L5, resulting in severe right neural foraminal narrowing and right L4 exiting nerve root impingement." *Id.* at 958. The MRI results were referenced in records from Plaintiff's visit to the emergency department in January 2018 for right leg pain and lower back pain. The provider recognized that the MRI "showed extensive degeneration and a severe herniation with foraminal involvement." (Doc. No. 6-9, PageID 861).

Notably, each person who rendered a medical opinion in this case—except Mr. Gallagher—lacked access to the November MRI report, and presumably, other relevant evidence such as Mr. Gallagher's treatment observations and Plaintiff's latest physical therapy treatment records. In fact, this reasonably was factored into the weight assigned to the other medical opinions of record. But, even taking this into account, these opinions were assigned weight that was on par with the weight assigned to Mr. Gallagher's opinions.

For example, the opinions of state agency reviewing physicians, Drs. Anna Prosperi and Gerald Klyop, indicated that Plaintiff was capable of "medium level work with only minimal postural restrictions." *Id.* at 70. "Partial weight" was afforded because these "physicians did not have a complete record to review as additional evidence was received at the hearing level." *Id.* As indicated above, they specifically lacked the November MRI report, which the ALJ found, in weighing their opinions, to corroborate Plaintiff's reports of pain and support a limitation to sedentary work with additional postural restrictions. *Id.*

In spite of all of this medical evidence that was consistent with Mr. Gallagher's observations and the deficiencies in the other medical opinions of record, the ALJ declined

9

to consider Mr. Gallagher's opinions beyond whether they were "proportional" to treatment notes from one encounter. This limited consideration that merely hinted at the factor of supportability is not sufficient based on the particular facts of this case.

Moreover, the conclusion that Mr. Gallagher's opinions were "out of proportion" was followed by no explanation as to how these opinions were not proportional to the observations. This is concerning because Mr. Gallagher's opinions must have been supported by the record to an extent because some of his opined limitations are similar to the limitations that are set forth in Plaintiff's residual functional capacity. For example, Mr. Gallagher determined that Plaintiff was able to stand or walk for two hours in an eight-hour workday, and for thirty minutes without interruption. (Doc. No. 6-9, PageID 872). He also indicated that Plaintiff could sit for four hours in an eight-hour workday, and for one hour without interruption. *Id.* Plaintiff's residual functional capacity similarly limits Plaintiff to standing and/or walking approximately two hours during a workday. (Doc. No. 6-2, PageID 67) (Doc. No. 6-9, PageID 872). And while the residual functional capacity assessment provides for sitting approximately six hours in an eight-hour workday with normal breaks, it further accommodates her impairments by allowing her to alternate between sitting and standing up to fifteen minutes each hour. (Doc. No. 6-2, PageID 67).

Non-acceptable medical sources like Mr. Gallagher "have increasingly assumed a greater percentage of the treatment and evaluation functions handled primarily by physicians and psychologists." *Flory v. Comm'r of Soc. Sec.*, 477 F. Supp. 3d 672, 677

(S.D. Ohio May 6, 2020) (Newman, M.J.) (quoting SSR 06-03p, 2006 WL 2329939, at *3 (2006)); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). In fact, the applicable regulations provide that "an opinion from a medical source who is not an acceptable medical source…may outweigh the medical opinion of an acceptable source, including the medical opinion of a treating source." 20 C.F.R. § 404.1527(f)(1).

Therefore, although Mr. Gallagher's opinions were not entitled to any special deference, the consideration of his opinions must nevertheless be supported by substantial evidence. Here, the consideration rested on Mr. Gallagher's status as a non-acceptable medical source as well as the cursory determination that treatment notes from a single encounter were "out of proportion" to his opinions. For the reasons set forth above, this determination is not supported by substantial evidence, and Mr. Gallagher's opinions should have been afforded more robust consideration under the applicable factors set forth in 20 C.F.R. § 404.1527(c)(1)-(6). Accordingly, Plaintiff's asserted error is well-taken.[2]

## VI.   REMAND

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at

---

[2] In light of the foregoing, the undersigned declines to address Plaintiff's remaining claim.

545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). A remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and

whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Celeste M. Kelly was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case be terminated on the Court's docket.

May 18, 2021 *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge